## THE CANADIAN FARMER.

(District Court, S. D. California, S. D.　March 25, 1924.)

### No. 1119.

Shipping ☞84(3)—Ship held not chargeable with negligence which rendered it liable for injury to stevedore.

> Where a ship furnished booms and winches for discharging cargo, with proper tackle and appliances for fastening the booms to the ship to hold them in place during use, which attachment, as was customary, was made by the contracting stevedore, the ship *held* not liable for injury to a stevedore employee resulting from the breaking of a rope loop made by some of the stevedores and into which the lower block of the guy tackle was hooked, instead of into an iron ring provided by the ship for the purpose.

In Admiralty. Suit by John Sheehy against the steamship Canadian Farmer, and W. J. Boyd, master. Decree for respondents.

See, also, 290 Fed. 601.

Lorrin Andrews, of Los Angeles, Cal., for libelant.

Ira S. Lillick, of San Francisco, Cal., for respondents.

JAMES, District Judge. Libelant sues for damages for personal injuries alleged to have been suffered while working on board the Canadian Farmer, in port at San Pedro, in the early part of December, 1921. Libelant was a stevedore employed by the Outer Harbor Dock & Wharf Company, an independent contractor.

On the 6th of December, 1921, the Canadian Farmer, a steam vessel, arrived at the port of San Pedro with a cargo of lumber. She docked with her starboard side to the wharf. No. 3 hatch was equipped with two cargo booms or derricks with two winches to operate the same. The booms, being used for the main purpose of loading and discharging cargo, were kept, when the ship was at sea, lowered parallel with the dock and resting in crotches or "clutches." When needed for use they were raised, adjusted to the required height, the fall tackle placed, and the lift ropes run to the winches. Guy ropes with tackle were used to adjust the booms and hold them at the desired angle with the horizontal length of the ship. When the ship docked, with the starboard side to the wharf, it was necessary that the starboard cargo boom be so adjusted that it would swing over the side of the ship and above the wharf. The starboard boom of the Canadian Farmer at No. 3 hatch was adjusted in the general manner last described, when the stevedores began their work of unloading the cargo. The falls from each boom were shackled to the same hook and, in moving a sling-load of lumber to the port side, the port winch, pulling through the head of the port boom, would lift the load clear of the deck and it would be swung toward the wharf by the use of the starboard winch with the pull through the boom head on that side. The ship was loaded on her decks to a height of about two feet above the rail, so that, at the early stages of the unloading, it was necessary to lift the load high in order that it might swing clear to the dock—more than ordinary strain being placed

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

at the same time upon both ropes attached to the lift hook; although, so far as a decision of this case is concerned, it may be assumed that such a contingency might normally result in clearing the ship's load.

Libelant came aboard with other stevedores and went to work at No. 3 hatch under a stevedore foreman employed by the independent contractor, Outer Harbor Dock & Wharf Company. One of the lumber loads, started from the port side, failed to clear on the starboard side to the dock, and the foreman directed the libelant to assist it in getting clear. As he went to do this, the boom stay on the starboard side gave way under the strain and the starboard boom swung inward. The load coming with it and caught libelant's leg against other lumber, which resulted in serious fractures being occasioned to his limb, by reason of which he claims to have been permanently injured. The boom stay had given way at its lower fastening by the breaking of a 3¼-inch rope. This boom stay in its complete form, as carried as a part of the ship's equipment, was made up first of a wire rope (called a pennant), which was shackled to the head of the boom and again shackled to the first block of the guy tackle. The guy tackle was a two-block affair, and the lower block had shackled to it a hook. The mode of fastening the lower end of the guy tackle customarily was to insert the hook into iron rings, located under the lip of the rail at intervals along the iron sides of the ship. As a precaution against the breaking of any part of the guy tackle, a preventer rope accompanied the stay gear. This rope was iron (a wire rope) and was firmly shackled to the iron pennant and, when properly used, after the guy tackle had been hooked into a ring the preventer would be separately fastened into the ring, making a loop and all of the rope tackle, furnishing a wire or iron emergency support from the ring to the boom head. The use of a preventer such as this appears to be so usual as to render the employment of it an ordinarily understood and necessary part of reasonably safe equipment of that kind. The stay on the port boom of the Canadian Farmer which gave way was not so secured. In the first place, instead of the lower block being hooked into any of the iron rings designed and available for that purpose, a piece of 3¼-in. (circumference measure) rope was run through one of the wash ports and around the rail and tied, making a loop, and into this rope loop was hooked the lower block of the guy tackle. The preventer wire, instead of being fastened to a ring, or passed through the wash port and tied, in either of which positions it would without doubt have held the strain, was tied into the same rope loop, so that, should the rope fastening give or break, the preventer as well as the guy tackle would carry away with it. That is what happened when libelant was injured.

I do not understand it to be the contention of libelant's counsel that it was the duty of the ship to see that the guy tackle was properly and securely fastened to the ship's side, in whatever position the stevedores might need it to do the work of unloading the cargo. The natural conditions affecting the duties of stevedores would seem to effectually negative any such contention if made; for it is admitted that, in the discharge of a ship's cargo, the adjustment of the boom stays may vary and change, and how those stays shall be placed and when they shall

be moved is a matter naturally and necessarily within the control of the stevedores; and it should be assumed that stevedores knew that the iron rings on the rail would be the proper and safest place to attach the hook of the guy tackle block, and that they were familiar with the use of the preventer wire and the manner by which it should be fastened for the greatest safety. Counsel for the libelant argues that the piece of 3¼-inch rope called a strap or "strop" was a thing furnished by the ship as sufficient for the purpose for which it was used. Counsel admitted that that rope may have been attached there by the stevedores or by the officers of the ship. The rope was shown to be in good condition and of good kind—not, as libelant alleges, "rotten, unsound and defective." The point may be passed, however, that the proof of the condition of the rope failed to support the allegations, and it may be assumed (for present purposes) that the word "defective" is synonymous with "insufficient." Then it would seem that, if the stevedores made the attachment of the stay, as libelant's counsel admits may have been the case, they knowingly used as a strap a rope which their experience should have told them was insufficient to stand the strain intended to be put upon it. If they did not know this, their negligence in attaching the preventer wire to the rope, instead of to an iron ring, or making it fast by passing it through the wash port, seems very apparent. Whether that negligence was a direct act of the libelant or one of his fellow servants acting under the independent contractor will require that the decree be against him. The rule of comparative negligence is not involved, because the evidence is by no means satisfactory or sufficient to the point that the ship furnished or intended to furnish the rope to be used for the purpose it was made to serve. An officer of the ship testified that that rope was not intended for that purpose; that it was a "life line" kept about the deck for use in preventing the sailors, in the state of the deck with the lumber piled high, from going overboard; that the iron rings were the places intended to be used for the attachment of the stay block hook; and that these rings were accessible.

From the photographs introduced in evidence showing the location of those rings, it seems quite clear that they were as accessible, if not more accessible, than the wash port opening, the top of which was apparently a number of inches below the lip of the rail; the rings being attached to the under side of the lip. Moreover, the testimony is fairly convincing that the ship's habit was, and its duty as well, upon coming into port, to free the cargo booms, supply and arrange the tackle to be used in connection therewith, and leave the booms to be fastened and adjusted by the stevedore crew as might suit their needs and inclination. The officers of the ship testified that the ship was so prepared on the day in question when the stevedore crew came aboard. The traffic manager of the stevedore company, the immediate employer of the libelant, testified to the same state of facts, and stated that the booms were not attached or fastened in any particular position when the stevedores took charge. He stated that in making ready for the handling of ship's cargo the booms were hoisted up by the ship's crew and the balance of the rigging was done by the stevedores, particularly saying:

"We place the gear; it is furnished by the ship. The stevedore company does the clearing away and arranging the booms and gears."

The ship's officers testified that any fastening that they made of the boom stays was merely a fastening to hold them in place, to prevent undue swinging. The temporary nature of such fastening would be apparent from an inspection of it by the stevedores, and the requirement that they should attach and re-attach the stays shows that they would be well informed as to the sufficiency and stability of the fastenings. The general conditions connected with the discharge of a ship's cargo and the necessary control that a stevedore crew must have of the appliances furnished for their use corroborate the evidence given by the ship's officers and that of the employer of the libelant.

My conclusion is that the ship in this case did furnish gears and tackle stays and appliances of a good and sufficient character, and that it was no part of its duty to attach the boom stays to the ship before turning over the winches and booms for use in unloading the cargo; that it was negligence on the part of the stevedores to attach the lower guy tackle block to the rope instead of to a ring; and that it was negligence likewise for them to attach the preventer wire to the rope instead of separately attaching it to the wash port of a ring.

The decree must be for the defendants.